Good morning, your honors. My name is Christopher Collins. I am attorney at Shepherd Mullen representing the appellants Brett Howard and Corey Petula in this appeal. This case involves Do you want, you've reserved five minutes. I'm sorry. Okay, she has five minutes reserved for her reply if that's acceptable. The underlying dispute in this case involves an effort by Halmedica to enforce non-compete obligations. We're familiar with the facts. Right. So cutting to the chase, the key issue here is whether the district court properly applied the restatement section 187 standard to enforcement of choice of law. So we're applying how we're predicting in diversity, a New Jersey court would apply this, correct? That's correct. What are the Most of the case law out there is about franchise agreements. And New Jersey has a, you know, franchise protective policy. It, you know, has a bunch of laws about this. This is an employment context. And, you know, New Jersey's approach to public policy is different in the employment context. New Jersey law is fine with and enforces these non-competes. So can we necessarily predict that, you know, the best we have is we have a district court case, not binding, diversant, one of the few employer-employee cases where California employees tried to apply California law against a New Jersey corporation. And, you know, we said, the district court there no, we're not going to, you know, they adopted the employer-friendly approach to this. I think it's important to look at the analysis in Adler v. Grumman, the recent case. Okay. And I think what is critical here, and you're correct, there are a number of cases involving New Jersey's interests in protecting franchisees who operate in New Jersey, right? I think the analogous comparison here is California's interest in protecting its employees. Okay. Well, that's where we get to the restatement. And let's set aside whether franchisees are different. Let's focus on the restatement. The general rule in the restatement is 188. If you don't have a choice of law provision, we look at the most significant for when there is a choice of law provision. I'm not seeing how your approach to the, you know, the materially greater interest is different from what would apply if there were no choice of law. But surely, materially greater interest has to impose a higher bar than would apply absent. That's why there's a separate 187 and 188. So it can't just be, okay, let's grant California has a modestly greater geographic connection here. Both states have public policies that they care about that are at odds. So if we were doing the 188 analysis, I think we would come out with California. But 187, you're nodding, 187 though has to require more than just it's the most significant relationship. Why shouldn't we say that we will normally defer under 187 to a choice of law, unless, you know, materially greater interest, like if this case had nothing to do with New Jersey, I would grant you were right. But there's something to do in New Jersey. There's a New Jersey headquarters for the spinal business. So what work does the choice of law provision do? And when would that tip the scales when it wouldn't under 188, a choice of law? I think that's right. 187 basically says that ordinarily, ordinarily, a choice of law provision in a contract will be enforced. That's the rule. And then there are some exceptions. The exception, but the exception is a material media exception. It says if another state has a materially greater interest in determining the particular issue in the dispute, right? So what is the particular issue in dispute here? We would submit that the issue is whether Mr. Howard and Mr. Petula can work, can compete, can work for another employer in California. The situs of the dispute here is California centric, right? Howard and Petula lived and worked exclusively in California. They want to move to another employer and work in California. I understand. But the way that your friend on the other side would characterize this dispute is, can some employees who with their eyes open, sign this agreement, poach their clients? And New Jersey thinks it's a good thing for New Jersey businesses, which New Jersey cares about, to be able to protect their client base for a modest period of a year or two after working. So we can characterize the interest two different ways. And California has an interest in some employees who are there. And New Jersey has an interest in its business. And we got to adopt a rule of principle that applies in this era of virtual work where employers might not know where the employee is going to move to or whatever. So when does the choice of law provision add enough to counterbalance? Is it going to be overcome by a featherweight or is it going to be only when the employer picked a jurisdiction of convenience that just, it doesn't have a dog in the fight? Now, 187 requires a meaningful analysis of the interests of the states at issue. And in this California versus New Jersey- All right. And so we are supposed to predict that a New Jersey court would say, New Jersey's policy in protecting New Jersey businesses and New Jersey client data, et cetera, it doesn't really matter here. I would say this. First of all, I think Adler requires that the district court not simply count contacts. What are the various contacts? It requires a fulsome analysis of the state's policy interests. And the policy interest here of California is its policy to protect its employees who live exclusively, work exclusively in California. The district court did not consider those policy considerations at all. All it did, which is exactly what the district court did in Adler, is count contacts. Okay. So it shouldn't count, it should weigh. We could remand for that or we could take that on ourselves. Let's say we did it ourselves, okay? Why should we think that California's interest is materially greater? That a New Jersey court, we predict that a New Jersey's in in-state work is materially greater than New Jersey's interest in protecting a New Jersey business and its New Jersey, the goodwill and its client contacts and all of that. I think that the franchise cases are actually helpful here. Why? Because in those cases, the courts are recognizing that in those cases that happen to be New Jersey's interest, New Jersey has a special interest in protecting its franchisees, right? And that parties should not, with a stroke of the pen, and that's the quote from Adler in particular, using a choice of law provision, a stroke of the pen, divest those franchisees, those consumers. There's also consumer cases as well. So we have franchisees and consumers who are operating in a state and are protected by those states' laws. Right. But the nature of a franchise agreement is you're getting a franchise for some territory in some state. I can get the like, okay, you got a national McDonald's and you got a McDonald's in New Jersey, right? So of necessity, you've been granted a franchise for New Jersey. But the nature of remote work these days is they can hire some employee and the employee can then decamp to California and then try to get out of the choice of law provision and get out of the So we need to say something in this case that will help these employers who, you know, they may be anywhere and the employees can opportunistically go to California and get out of these agreements and move, that they signed with their eyes open, you're not contesting that, and move somewhere else. And that just poses a lot more problems than it does in the franchise context. It's franchise, the point of those franchise cases, I believe, and also the consumer protection cases. They're protecting individuals and businesses who operate within that state, franchisees, consumers. In California, it's employees. Right. But franchise is designated by its contract to operate in that state. Employees move around in our remote work area where they're not contractually required to be in that state and they could opportunistically choose to go into that state. Right. But they're actually physically, in this case, they lived and worked only in California. And the California policy is very clear. Right. And I would also say that in this case, Helmetica has chosen to operate in California. Right. That's a contact that's very important here. They're availing themselves of the ability to hire and employ employees in California, California citizens. Right. And California's policy is if you want to do that while you're operating in California, you have to abide by the employment mobility regulations of that state. Is California going to become a refuge for people who want to get out of their employment contracts to move there and set up remote businesses? And California can be, it's like the 49 gold rush. All these people go there and they get out of their contracts. How is your rule not going to incentivize that? I suppose there could be an incentive for everyone to sort of just work in California now for those reasons. But look, that's California's rule. That's its law. And New Jersey, you predict, would allow California to become that kind of refuge under its own choice of law provisions. I think it's far-fetched to imagine that something like that would happen. But I do think this is an important point. Look, if 187 is to have sort of any sort of like validity here, in other words, if a choice of law like the choice of law we have here is not automatically Trump, right? I grant you. Look, if you had a New Jersey employer and a California employee and they said the laws of the state of New Hampshire should govern, it's really clear that 187 would say, no, you can't just opt into the laws of the state of New Hampshire or Hong Kong or whatever it is. But that's not what we're talking about. No one claims that they opportunistically rigged this contract. They've got a real presence in New Jersey. It's not just been done to stack the deck against the employee. So you're right, but I don't think it makes 187 surplusage. It deals with the we'd like New Jersey or, I'm sorry, New Hampshire or Hong Kong law to apply situation. But it allows employers like Helmetica, who are operating in California, to not only avoid California's strong public policy prohibiting non-competes, protecting the mobility rights of employees, but also there is now a statute in California which prohibits employers from using choice of law provisions to avoid that mandate, right? There's a provision that says employers cannot use choice of law provisions in contract. And the current law in California says it doesn't matter if you were in New Jersey, you signed in New Jersey, there was nothing that required this be a California business. The current law in California says if that employee then moves to California, we will treat it as invalid regardless of where it was signed. Do you think that would make a difference? Do you predict that a New Jersey court would honor the current version of the California law, not the one that applies to this case? Right. I don't know. I don't know whether that's the case. I think what you've just described, though, emphasizes how strong the California public policy is. Incrementally, it's moved from prohibiting non-competes to then prohibiting employers from using choice of law provisions to avoid that, and even further now to prohibit them from using choice of law provisions that are executed outside of California. I think it emphasizes the really strong public policy here that, again, the district court just completely ignored. Okay. Let's say we remanded. Would it suffice for the district court to add a sentence or two saying, I considered California's policy interest, I decided it wasn't materially greater? I think if that were to happen, I would urge this court to reach that issue because I think if that happens, then as a practical matter, 187 doesn't exist anymore, right? That standard goes away because it's always going to be the case that the choice of the law is going, the New Jersey choice of law is going to trump, right? The designated choice of law is going to trump. There has to be meaningfulness to the 187 analysis. The district court didn't do it at all, but if the court actually did it and actually looked fairly at the very strong California public policy here and fairly analyzed what the dispute is about, this dispute is about whether how Medica can enforce non-compete agreements in California, right? It's not outside of California. We're talking about employment mobility rights exclusively in California. Does how Medica or New Jersey have a compelling interest in regulating employment mobility in California? That's the question that this court needs to consider and whether that interest, New Jersey's interest in regulating employment in California is greater than California's interest. I think just simply articulating that issue answers the question because California clearly has a greater interest in regulating employment mobility rights of its citizens working, living in California exclusively. I see my time is up. If there's any other questions, I can address them. I have reserved five minutes. All right, thank you. We'll get you back on rebuttal. Thank you. Mr. Lange, when you're ready. Thank you, Your Honor. May it please the court, Aaron Lange from Nelson Mullins, Riley and Scarborough for the appellee. I just want to begin by dovetailing, Judge Bevis, on the point you made that they're citing a bunch of franchise cases that are inapposite. The other problem with the cases they cite, a number of them, is that the law that's designated in the choice of law is discarded for the law of another state. But those cases involve claims being brought under that other state's law. Take a look, for example, at HOMA versus American Express, which this court cited in Adler, and they cite in their reply brief. That was a case where you had a Utah bank, a Utah choice of law clause that was discarded in favor of a New Jersey customer's claims. But the key was that the New Jersey customer was bringing claims under New Jersey law. New Jersey, and I'm reading from the decision here, New Jersey undoubtedly has the most significant contacts with the litigation, as the only claims asserted are violations of the New Jersey Consumer Fraud Act. Again, in Cabela's, the lower court here distinguished Cabela's on the basis that the New Jersey choice of law clause was discarded in favor of the employee's state law of Nebraska because they were bringing Nebraska claims. Here, this is a New Jersey corporation bringing New Jersey claims in a New Jersey form. So those cases are completely the opposite. And to your point about the franchise cases, you're right. The reason why they have to cite a bunch of franchise cases and class action waiver cases is that all the non-compete cases come out in our favor. We cited five different non-compete choice of law cases in the third circuit where the exact arguments that are being made here were made and rejected. Take a look, for example, at the case you mentioned, Judge Bevis, Diversant. That decision, which Judge Padin relied on below, looked at exactly the issues here. I'm reading from that case. There is no question California has a substantial relationship to this dispute and a material interest in enforcing its strong public policy against non-competition clauses in employment agreements. So what do we do about Adler? Adler, does Adler require us at least to remand? The district court didn't consider California's policy interests. No, I'm sorry. Yeah, it's an intervening case. The district court didn't have the benefit of it. Well, look, first of all, I'd say there are post-Adler decisions, including the one we submitted as a supplemental authority, La Quinta, that continue to enforce those pre-Adler decisions like Diversant. In fact, La Quinta cites the decision below here as still being good law. Yes, Adler reinforces that we got to look at the policy interests too, but Judge Padin relied on a chorus of cases that did look at the policy interests. Diversant considered the fact that California has a material interest in enforcing its strong public policy against non-competition clauses, but then concluded, however, New Jersey also has a substantial relationship to this dispute and an interest in enforcing its company's rights, in enforcing covenants that are reasonably designed to protect the legitimate interests of its residents, and in protecting the confidential information of its And so Adler, yes, there were pre-Adler cases that only really looked at the geographic dimension of this analysis. Adler reminded us that we got to look at the policy issues too, but that happened here. Judge Padin looked at a bunch of cases where this exact scenario where you have a home state company trying to enforce its New Jersey choice of law against a California resident or a Louisiana resident or Nebraska resident that's anti-non-compete, that issue was considered. And so in that sense, Adler doesn't really change the analysis. And I want to just follow up on a point that you made, which is that, well, in this day and age where, you know, employees are moving around the country, they're working remotely, how are we to protect our home state New Jersey companies? And that's a And I just want to point out that some of the decisions we cited emphasize that very point. For example, SKF talked about the fact that a national company has to have some ability to deal with employees in different states uniformly, or else it's just a total patchwork and there's no predictability. So that, I guess what I'm saying is a good point, Your Honor. Another point you made is, well, what's the difference between a case where there is a choice of law and a case where there isn't? And it's important that there is a choice of law here. That's the baseline. And in COFAE's collections, a decision by this, it's a non-precedential decision, but I think there's an important comment in there, which is that to enter into a contract under Delaware law and then tell the other contracting party that the contract is unenforceable due to the public policy of the state is neither a position that tugs at the heartstrings of equity, nor is commercially reasonable. That was one of the many non-compete cases where the choice of law was upheld. Another point I'd like to make, Your Honor, is that there is dovetailing with that. They talk about what tugs at the heartstrings. We've got to look at this case and equities a little bit. If you look at Judge Padin's decision, she concluded that, and I quote, the appellants showed serious disregard for the agreements they signed. These are employees that were literally introducing Helmetica's customers to a direct competitor before they even left the company. And so there were blatant violations of the non-compete here. And to leave a company naked and exposed to that type of egregious conduct really shows that the facts here demonstrate the policies in play. There's got to be some ability of- May I ask a question of you then, based on that. You have pointed to some facts in this case that I think are unavoidable, ought to be. But it raises the question, at least for me, that where is here, we have the parties explicitly adopting New Jersey choice of law. We have my understanding, and I think the understanding of the district court is, of course, that we have to analyze this question under Section 187, 2B, which we've discussed. I ask you, isn't the choice of law of the parties then, as you seem to be suggesting, a factor that ought to be applied somehow, with some weight in any event, to the test that we are to apply here of these materially greater interests? Can it have some weight in that equation? Oh, yes, absolutely, Your Honor. I think that's the baseline here. And to be clear, we believe that there has to be some sanctity of a choice of law. And that's the very reason why, if there is a choice of law, it's only going to be discarded if it violates the fundamental policy of another state that has a materially greater interest in the dispute. It's a very high bar. Understood. And this is a question I wanted to ask counsel for the other side, and ask if he addressed on rebuttal. And perhaps the answer is painfully clear from the test itself, the language of the test itself. It is not to me, what does materially add here to greater interest? It's a modifier, but what difference does it make between a greater interest? Because it seems to me that what's called, what's required in the district court here, and if this goes back, because the court, the district court, apparently, seems not to have addressed policy interests as added would require. What is material when we're talking about greater interests? That's a great question, Your Honor. It's a little bit of a squishy word. I do think that the District of New Jersey in the La Quinta case that we submitted did a pretty good job of characterizing that term. And so what they said is that another state does not have a materially greater interest if the relevant contacts do not clearly point in a single direction. So if there's anything, in its words, close to a tie, a push, you don't have a materially greater interest of the other state. And that's exactly what we have here. You have a New Jersey incorporated company with an operational base in New Jersey that supported these employees in California. You have New Jersey claims being asserted in a New Jersey forum. And then on the other side, you have California residents working in California. Those facts certainly do not point in a single direction. So by way of illustration, I'm trying to answer the question of what material has to be. It's difficult to put an exact definition on it, but I think La Quinta is as close as we have, which is it's only materially greater if everything points in a single direction. And that's just not the case here. And so for that reason, I think Judge Padin got it right, and her decision ought to be affirmed. Tony, do you have any other questions? No. Brooks, anything else? All right. Thank you. Thank you. I'll yield back the rest of my time. Thank you, Your Honors. Thank you. Just a few points that I want to emphasize here. Again, going back to Adler, the analysis that the district court didn't do and is required to do is to consider, in particular, California's protections of its own laws, in this case for its citizens. It needs to consider those policy interests. That wasn't done here. Now, whether it's franchisees or consumers or employees, the analogy holds. Is there a bargaining power difference? Franchisees are kind of tethered to this monopsony. Employees can go to different employers. Should that lead us maybe to be... Moreover, New Jersey law recognizes the bargaining power problem that franchisees have and is not concerned about any employer conduct. If we're predicting how a New Jersey court would treat it, maybe there should be more solicitude for franchisees and less for employees. You have to apply that analysis when evaluating California's public policy, in particular, because we're talking about California employees here. California is very protective of its employees and recognizes... You were talking about its employees and its citizens, but California's law now says we don't care whether the person was a California citizen. We don't care whether the person is a California resident. We don't care if the person lived here. We don't care if the person worked here. Once the person's here, we're just going to avoid all of these things. Is that a public policy that New Jersey is going to treat as actually a materially greater interest or as California reaching too far beyond its borders? It is not an issue that's relevant for this appeal because the statutes that you're referring to don't apply here. What is central here is the general prohibition in California on enforcing non-competes and also the prohibition on using choice of law provisions to avoid those non-compete restrictions in California. Will California's law always trump... The old version of the statute, will it always trump? Is there any situation in which California wouldn't have a materially greater interest? Sure. Eliminate the facts in this case. Here, the employees... And by the way, California certainly recognizes and protects because of the difference in bargaining power between employers and employees. But in particular, in this case, if the employees in question didn't work exclusively in California, if they had moved to California at some point in time, that may be a different factor. Here, the employees lived and worked exclusively in California. If they worked somewhere else other than California, if they had ties in other states as well, perhaps. And importantly, if Helmetica was trying... All Helmetica is trying to do here is prevent these California employees from working for another employer in California. Well, you're... Okay. First of all, it does sound like your clients might have breached their employment contracts while they were working for Helmetica, which might be a separate cause of action. But second, your clients seem to have unclean hands, at least if these allegations are proven true. And if they are, then should they be able to take... Would New Jersey consider that in terms of New Jersey's having a significant interest in holding their feet to the fire because this is not their getting caught unawares after leaving employment? So the unclean hands allegations are disputed and are not relevant to the summary judgment decision, first of all. But it's important to understand these employees lived and worked in California. They were told by one of their managers that, of course, these restrictions are not enforceable in California, right? And so employees who live and work in California understand because it's the law of that state. But they weren't told this at the time they signed the contract. They signed the contract with their eyes open and there's no allegation that they were coerced or pressured or misled or hoodwinked into it. They had no choice but to sign the agreements, right? It was handed to them. It wasn't negotiated. They weren't represented by attorneys, right? So there's a clear difference in bargaining power. They signed the agreements because they had no choice but to sign the agreements. But they knew that they lived and worked in California and they understood what the rules were and they were actually told by their manager what the rules were. It's not enforceable in California. That's the lay of the land. So I do think it's important to understand this difference in bargaining power that California recognizes with respect to its employees. I also want to address the issue about, well, do we actually consider the fact that they signed the choice of law provisions? Is that a factor? And I would urge this court to say no, not when you get to 187 analysis. So the way the rule works is ordinarily, right, there is an enforcement of a choice of law provision contractually, right? But then you apply the exception. You don't get a second bite at that apple. You don't get a second consideration. Well, now when we consider the 187 factors, which state has a materially greater interest, do we then consider the fact, oh, but they signed a choice of law provision, right? That's how we get into 187. 187 and you look at Adler. Once you're in 187 exception land, the rule is basically 188. The choice of law agreement kind of goes away. No, I'm not saying that, Your Honor. I'm saying you evaluate, look at Adler, look at the rule itself. Which does another state, does California have a materially greater interest in their underlying dispute? The underlying dispute here has to do with employment mobility issues in California, right? That should be the sole focus of the 187 analysis, is which state, is there another state other than the designated state that has a materially greater interest in the underlying dispute? You don't add to that, oh, and by the way, they signed the non-competent, I'm sorry, the choice of law provision, because you're counting that twice, right? We enforce it ordinarily, except if this 187 applies, and you don't reincorporate that second bite at the apple, consider it twice. Okay. We thank both parties for their helpful briefing and argument. Do you have any more questions? No. So I'd like to ask that the parties work together to have a transcript prepared and split the cost. We'll take the matter under advisement, but before we go to the next case, we'll first go off the record and briefly greet counsel.